## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| Global Geophysical Services, Inc., | ) | **AMENDED ORDER GRANTING** |
| | ) | **PLAINTIFF'S MOTION FOR** |
| Plaintiff, | ) | **TEMPORARY RESTRAINING ORDER** |
| | ) | |
| vs. | ) | |
| | ) | Case No. 4:15-cv-16 |
| Louis M. Kuster, | ) | |
| | ) | |
| Defendant. | ) | |

_____

Before the Court is the Plaintiff's "Motion to Amend/Correct Order on Motion for TRO" filed on February 10, 2015. See Docket No. 14. On February 10, 2015, the Court issued a temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. Shortly after the Court issued its temporary restraining order, the Plaintiff, Global Geophysical Services, Inc., filed an amended complaint correcting the caption and the name of the Defendant landowner. The Plaintiff seeks an amended the temporary restraining order reflecting these changes and which prohibits the Defendant from interfering with the Plaintiff's geophysical exploration activities on certain real property the Defendant owns in Mountrail County, North Dakota. For the reasons set forth below, the Court grants the Plaintiff's motion.

## I.      BACKGROUND

The Plaintiff, Global Geophysical Services, Inc. ("Global"), is a Delaware corporation organized under the laws of the State of Delaware with its principal place of business located in Missouri City, Texas. Global is engaged in the business of conducting geophysical exploration operations throughout North Dakota and elsewhere. Global is authorized to do business as a foreign corporation in the State of North Dakota.

The Defendant, Louis M. Kuster ("Kuster"), is a resident of the State of North Dakota and the surface estate owner of certain real property ("Subject Property") in Mountrail County, North Dakota, described as follows:

Township 157 North, Range 91 West
Section 13:    S1/2SW1/4
Section 24:    NW1/4NW1/4, El/2NW1/4
Section 25:    NEl/4, El/2NW1/4, Nl/2SE1/4

Kuster does not own any mineral rights in the Subject Property.

Global alleges it was retained by EOG Resources, Inc. ("EOG") to conduct geophysical operations on an area approximately 174 square miles in size located in Burke and Mountrail Counties, North Dakota, referred to as the "Sidonia 3D Project." The Subject Property is located within the Sidonia 3D Project. EOG, along with other individuals, hold an interest in the oil and gas leasehold estate granting them the right to conduct geophysical exploration operations on the Subject Property. EOG and others holding interests in and to the oil and gas leasehold estates have entered into an agreement with Global for geophysical operations to be conducted on the Subject Property. Global commenced geophysical operations on the Sidonia 3D Project on December 8, 2014. Global has already conducted geophysical operations on approximately 83,200 acres, or 130 square miles, of the Sidonia 3D Project. The purpose of geophysical exploration is to gather data from below the surface of the earth so the same can be processed and analyzed for use in oil and gas exploration activities. Global has obtained a "geophysical exploration permit" from the North Dakota Industrial Commission to conduct geophysical exploration on the Subject Property. See Docket No. 8-1.

By letter dated December 17, 2014, Global gave notice to Kuster that it would be commencing geophysical exploration activities on the Subject Property. See Docket No. 8-2. The notice contained an offer of $4,955.70 as compensation to the Kusters for the use of the Subject

Property. Kuster did not respond to the notice.

On or about January 7, 2015, the Subject Property was surveyed, flagged, and receivers put in place for geophysical exploration. Global contends that on February 4, 2015, a Global crew attempting to enter the Subject Property encountered an individual who identified himself as the landowner and instructed the Global crew to vacate the property. See Docket No. 8. Global further contends that between February 5, 2015 and February 9, 2015, Kuster physically removed receivers from the Subject Property necessary for the geophysical operations to occur. See Docket No. 9.

Global filed a complaint in this Court on February 6, 2015. See Docket No. 1. The complaint makes claims for declaratory and injunctive relief. Global filed a motion for a temporary restraining order along with its complaint. See Docket No. 3. Global seeks to restrain and enjoin Kuster from interfering with Global's geophysical exploration activities on the Subject Property until further order of the Court. Despite difficulties in serving Kuster with the original Notice of Geophysical Operations, Global is attempting to give notice to Kuster of its intention to seek a temporary restraining order. See Docket No. 6.

## II.    STANDARD OF REVIEW

Global seeks a temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, which provides in relevant part as follows:

**(b) Temporary Restraining Order.**

**(1)** *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

**(A)** specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

**(B)** the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b). Global seeks a temporary restraining order without first giving notice to the Defendant.

The United States Supreme Court has recognized that in some limited situations, a court may properly issue *ex parte* orders of brief duration and limited scope to preserve the status quo pending a hearing. Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 438-39 (1974); Carroll v. Princess Anne, 393 U.S. 175, 180 (1968). The limited nature of *ex parte* remedies

> reflect[s] the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. *Ex parte* temporary restraining orders are no doubt necessary in certain circumstances, cf. Carroll v. President and Comm'rs of Princess Anne, 393 U.S. 175, 180 . . . (1968), but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.

Granny Goose Foods, 415 U.S. at 438-39 (emphasis in original).

Rule 65(b) directs the court to look to the specific facts shown by an affidavit to determine whether immediate and irreparable injury, loss, or damage will result to the applicant. In addition, it is well-established the court is required to consider the factors set forth in Dataphase Systems, Inc., v. C L Systems, Inc., 640 F.2d 109, 114 (8th Cir. 1981) in determining whether a temporary restraining order should be granted. The *Dataphase* factors include "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Id.

**III.    LEGAL DISCUSSION**

It is well-established that the movant has the burden of establishing the necessity of a temporary restraining order.  Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994); Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 737 (8th Cir. 1989).  "No single factor is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction."  Baker Elec. Coop., Inc., 28 F.3d at 1472 (quoting Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 503 (8th Cir. 1987)).

**A.    PROBABILITY OF SUCCESS ON THE MERITS**

When evaluating a movant's "likelihood of success on the merits," the court should "flexibly weigh the case's particular circumstances to determine 'whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'"  Calvin Klein Cosmetics Corp., 815 F.2d at 503 (quoting Dataphase, 640 F.2d at 113).  At this preliminary stage, the Court need not decide whether the party seeking the temporary restraining order will ultimately prevail.  PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1143 (8th Cir. 2007).  Although a temporary restraining order cannot be issued if the movant has no chance on the merits, "the Eighth Circuit has rejected a requirement as to a 'party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits.'" Id. (quoting Dataphase, 640 F.2d at 113).  The Eighth Circuit has also held that of the four factors to be considered by the district court in considering preliminary injunctive relief, the likelihood of success on the merits is "most significant."  S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992).

The Court must consider the substantive claims in determining whether Global has a

5

likelihood of success on the merits. Global alleges causes of action against Kuster for declaratory and injunctive relief. See Docket No. 1. A likelihood of success on the merits of even one claim can be sufficient to satisfy the "likelihood of success" *Dataphase* factor. See Nokota Horse Conservancy, Inc. v. Bernhardt, 666 F. Supp. 2d 1073, 1078-80 (D.N.D. 2009).

The Court finds Global has a strong likelihood of success on both its claims against Kuster. Based on the limited record before the Court, it appears Global has obtained the proper permits for its activities, and parties who have engaged Global have the clear legal right to develop the minerals underneath the Subject Property. It does not appear Kuster has any valid legal basis for interfering with Global's activities on the Subject Property. The harm suffered by Global is clear as geophysical exploration activities are very expensive, and an incomplete survey of the Sidonia 3D Project will have a detrimental impact on mineral owners throughout the project area.

As the Court has found a strong likelihood of success on Global's claims, no further analysis is necessary at this point. See Nokota Horse Conservancy, 666 F. Supp. 2d at 1078-80 (finding sufficient likelihood of success on the merits of one claim, without a need to undertake extensive review of other claims). The Court finds Global has shown the "success on the merits" *Dataphase* factor weighs strongly in favor of the issuance of a temporary restraining order.


**B.** **IREPARABLE HARM**

Global must establish there is a threat of irreparable harm if injunctive relief is not granted, and that such harm is not compensable by an award of money damages. Doe v. LaDue, 514 F. Supp. 2d 1131, 1135 (D. Minn. 2007) (citing Northland Ins. Co. v. Blaylock, 115 F. Supp. 2d 1108, 1116 (D. Minn. 2000)). "The 'mere possibility' that harm may occur before a trial on the merits is not enough." Johnson v. Bd. of Police Comm'rs, 351 F. Supp. 2d 929, 945 (E. D. Mo. 2004). The party

that seeks a temporary restraining order must show that a significant risk of harm exists. Doe, 514 F. Supp. 2d at 1135 (citing Johnson, 351 F. Supp. 2d at 945). The absence of such a showing is sufficient grounds to deny injunctive relief. Id. (citing Gelco v. Coniston Partners, 811 F.2d 414, 420 (8th Cir. 1987)).

Global contends it will suffer irreparable injury if Kuster continues to interfere with their exploration activities. Continued interference would strip Global of its legal rights under the permit issued by the North Dakota Industrial Commission. If the survey cannot be completed, the mineral owners will be impacted and drilling operations will be significantly delayed and potentially prevented altogether. In addition, the Global permit is only valid for one year. Geophysical exploration activities are expensive and delays occasioned by Kuster's interference only increase those costs. The affidavits and supporting documents filed by Global demonstrate the threat of irreparable harm is very real. See Docket No. 8, p. 4.

The Court finds the threat of Kuster's continued interference with Global's exploration activities is real and poses a significant threat of irreparable harm. Further, the Eighth Circuit has explained that a district court can presume irreparable harm if the movant is likely to succeed on the merits. Calvin Klein Cosmetics Corp., 815 F.2d at 505 (citing Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc., 633 F.2d 746, 753 (8th Cir. 1980)). As Global has demonstrated the threat of irreparable harm, the Court finds this *Dataphase* factor weighs in favor of the issuance of a temporary restraining order.

### C.     BALANCE OF HARMS

As outlined above, Global has demonstrated the threat of irreparable harm. The balance of harm factor requires consideration of the balance between the harm to the movant and the injury the

injunction's issuance would inflict on other interested parties.  <u>Pottgen v. Mo. State High Sch. Activities Ass'n</u>, 40 F.3d 926, 929 (8th Cir. 1994).  While the irreparable harm factor focuses on the harm or potential harm to the plaintiff, the balance of harm factor analysis examines the harm to all parties to the dispute and other interested parties, including the public.  <u>Dataphase</u>, 640 F.2d at 114; <u>Glenwood Bridge, Inc. v. City of Minneapolis</u>, 940 F.2d 367, 372 (8th Cir. 1991).

At this early stage, Global has clearly demonstrated a strong likelihood of success on the merits and a real threat of irreparable harm.  It does not appear the temporary restraining order Global seeks will harm Kuster in any way.  Kuster has an interest in the surface of the Subject Property, and a right to be compensated for the exploration activities.  <u>See</u> N.D.C.C. ch. 38-11.1.  Granting a temporary restraining order will not impact Kuster's right to compensation.  The issuance of a temporary restraining order, or further injunction, will merely prevent Kuster from unduly delaying Global's activities any more than they already have, and will prevent Kuster from taking action against Global's employees that enter the Subject Property.

If the *ex parte* temporary restraining order is not granted, Global will be forced to either abandon its planned operations on the Subject Property, which would render the efforts on the Sidonia 3D Project incomplete, or suffer a lengthy and costly delay in exercising its rights under the permit obtained from the North Dakota Industrial Commission.  Under either of these scenarios, Global will be irreparably harmed.

The balance of harms clearly favors Global.  Given the relatively short time period and the potential for Global to suffer lengthy and costly delays resulting in significant harm, the Court finds the "balance of harm" *Dataphase* factor weighs in favor of issuance of an *ex parte* temporary restraining order.

**D.     PUBLIC INTEREST**

The final *Dataphase* factor, which involves consideration of public policy, also favors the issuance of a temporary restraining order.  The North Dakota legislature has specifically declared that the development and production of oil and gas is in the public interest.  N.D.C.C. § 38-08-01 (stating it is "in the public interest to foster, to encourage, and to promote the development, production, and utilization of natural resources of oil and gas in the state").  The legislature has also found the rights of surface estate owners "should be justly compensated" for the use of their property occasioned by oil and gas development.  See N.D.C.C. § 38-11.1-01.

Granting a temporary restraining order comports with both of these public interests.  Public policy, as clearly stated in North Dakota law, favors the development of oil and gas resources.  In furtherance of this policy, North Dakota law provides the mineral estate is dominant and the surface estate servient.  Hunt Oil Co. v. Kerbaugh, 283 N.W.2d 131, 135 (N.D. 1979).  While public policy favors compensation for owners of the surface estate, it does not permit surface estate owners to interfere with the development of the mineral estate.  Global has offered to compensate Kuster for any damage caused to their property by Global's activities.  In this way, oil and gas is developed, and the rights of the surface owner are protected.  Therefore, at this preliminary stage, the Court finds this *Dataphase* factor weighs in favor of the issuance of a temporary restraining order.

After a careful review of the entire record and the *Dataphase* factors, the Court finds Global has met its burden under Rule 65(b) of establishing the necessity of an *ex parte* temporary restraining order.

## IV.   CONCLUSION

The Court has carefully reviewed the entire record and the *Dataphase* factors and finds the

Plaintiff has met its burden under Rule 65(b) of establishing the necessity of an *ex parte* temporary

restraining order.  The Court **GRANTS** the motion for a temporary restraining order (Docket No.

3).  As a result, the Defendant and any person or entities acting in concert with or on behalf of

Defendant, are **TEMPORARILY RESTRAINED AND ENJOINED** from interfering in any way

with the Plaintiff and its contractors' access to and use of, the following real property, located in

Mountrail County, North Dakota, for geophysical operations:

> Township 157 North, Range 91 West
> Section 13:     Sl/2SW1/4
> Section 24:     NW1/4NW1/4, El/2NW1/4
> Section 25:      NEl/4, El/2NW1/4, Nl/2SE1/4

In addition, the Court **ORDERS** the following:

1) A hearing will be held in Courtroom One of the U.S. District Court for the District of North Dakota, in Bismarck, North Dakota, on **Wednesday, February 25, 2015, at 9:00 a.m.** to determine whether a preliminary injunction should be issued.

2) At the hearing, the Plaintiff shall be prepared to show cause why a preliminary injunction should be issued.  If the Plaintiff fails to do so, "the court must dissolve the [restraining] order."  Fed.R.Civ.P. 65(b)(3).

3) At the hearing, the Defendant shall be prepared to show cause why he should not be preliminarily enjoined during the pendency of this action.

4) At any time, the Defendant may file a motion to dissolve or modify this temporary restraining order in accordance with Rule 65(b)(4) of the Federal Rules of Civil Procedure.  The Defendant may also contact the U.S. District Court to modify the time or date of the scheduled hearing.

5) The temporary restraining order will not become effective until the Plaintiff serves the order on the Defendant.  The Plaintiff shall arrange for the immediate service of this order together with the Plaintiff's motion for a temporary restraining order (Docket No. 14), memorandum in support (Docket No. 15) and the supporting pleadings and affidavits (Docket Nos. 5,

6, 7, 8, and 9), and shall promptly file proof of service with the Court.

6)      No bond shall be required to be posted by the Plaintiff before the temporary restraining order is effective.

7)      In accordance with Rules 65(b)(2), this order expires in 14 days or on or before February 25th, 2015, at the same hour of this Order, unless the Court, for good cause, extends the order "for a like period or the adverse party consents to a longer extension."

**IT IS SO ORDERED**.

Dated at 9:00 a.m., this 11th day of February, 2015.

           */s/ Daniel L. Hovland*
           Daniel L. Hovland, District Judge
           United States District Court